## HALLMAN v. GEORGE.

1. HOMESTEAD.—Where a party executes a deed to another to secure a particular debt, and thereafter becomes further indebted to vendee, upon action for possession of land by heirs of vendee, defendant setting up that deed was given to secure a certain debt which had been paid and seeking reconveyance, judgment in favor of defendant that first debt had been paid, but that there was other subsequent debts due estate of vendee, that land should be sold to pay such debts, vendor is not entitled to homestead as against subsequent debts.

2. IBID.—RES JUDICATA.—Where defendant in action for possession of land sets up that deed was intended as mortgage, but does not plead claim of homestead against other subsequent indebtedness of his vendee, such claim is barred by judgment decreeing sale of lands to pay subsequent indebtedness.

Before GARY, J., Lexington, April, 1904.   Reversed.

Petition for mandamus by D. J. Hallman against Samuel B. George, as clerk of the Court.   The Circuit decree is as follows:

"In this proceeding, the petitioner, D. J. Hallman, seeks a writ of mandamus requiring the clerk of this Court to set off to him as the head of a family, a homestead in lands ordered to be sold by the said clerk.

"The petition alleges that in 1903, the heirs at law commenced an action against him for possession of a tract of land therein described.   To that suit the petitioner set up, among other defenses, that the deed to J. H. Lewie was made by him to secure a debt of $350, and that it was agreed that the petitioner should sell off of the tract of land, report the sales to Lewie, who was to make the deeds to the purchaser, collect the purchase money and credit the same on petitioner's indebtedness, and that about $1,200 worth of land had been sold by Lewie and the purchase money collected by him, which paid the note in full; that the tract of land has been reduced by sales to about 135 acres, of which the petitioner

was then in possession, and the petitioner asked that heirs of
Lewie be required to execute titles to him for the land.

"That after reference and testimony, the issues were heard
by Judge Klugh, who held that the deed was executed to
Lewie to secure a debt of about $350; that Lewie had col-
lected $1,200 from sales of lots off of the lands which should
be applied to this debt; that the debt was paid in full; and he
adjudged that the heirs of Lewie should execute to the peti-
tioner, D. J. Hallman, titles to the land in question.   That
the Lewie heirs appealed from this decree, and the Supreme
Court (53 S. C., 18), affirmed the decree of Judge Klugh,
except that it held before the petitioner could demand con-
veyance from the heirs at law, he must pay Lewie's estate
any other debts due it by him.

"That the case was then referred for the purpose of ascer-
taining the amount due the estate of J. H. Lewie by this
petitioner.   After reference and testimony, this case came
on before Hon. Frank B. Gary, special Judge, who held that
the petitioner was due the estate of Lewie $752.50, and that
unless he paid this amount in a specified time the land should
be sold by the clerk of Court.   That the petitioner was not
finacially able to pay the said amount, and hence had served
on the clerk of this Court a demand, stating that he was in
possession of said lands, living on same with his family as a
home, that he was the head of a family, and demanded that
the said clerk lay off to him a homestead, which the said
clerk had failed and declined to do.

"The return of the said clerk does not contradict any of
the allegations of fact of the petition, states some of them
more fully, makes the decree of Hon. Frank B. Gary, special
Judge, a part of the return, and submits that petitioner is not
entitled to a homestead as against the debt due by him to
Lewie's estate.

"From the pleadings and the decree of special Judge Gary,
I find:

"(1) That the deed from petitioner to Lewie was made
to secure a debt of about $350.

"(2) That this debt has been fully paid.

"(3) That the amount of $752.50 found by special Judge Gary to be due to the estate of Lewie, was a balance of a running account between Lewie and petitioner for several years after the execution of said deed, the petitioner working as day laborer for Lewie and Lewie advancing to him merchandise and money.

"Where the owner of land gives a deed to secure a debt, and afterwards pays the debt in full, he is then the owner of the land by equitable title.

"The question, then, is, is the petitioner entitled to a homestead as the head of a family in lands to which he holds only an equitable title? I think this question is settled in favor of petitioner, in *Munro* v. *Jeter,* 24 S. C., 29, and *Ex parte Kurtz,* 24 S. C., 468. The Court says in the latter case, at page 471, 'while a homestead in a case like this cannot be claimed in land held under contract of purchase until the purchase money has been fully paid, yet after it has been paid there is no obstacle in the way of such claim, even though the judgment debtor had not acquired a former legal title.' The provision of the Constitution of 1895 (art. III., sec. 28), is that there shall be exempted from sale 'to the head of any family residing in this State, a homestead in lands, whether held in fee or any *lesser estate,* to the value of one thousand dollars' (italics mine).

"The point was made in argument by respondent's attorneys that the petitioner having failed to set up the claim of the homestead in his answer to the original suit for the possession of the land, he is now estopped from demanding it. In *McMaster* v. *Arthur,* 33 S. C., 512, an action was brought against the widow and children of a decedent to sell lands to pay debts. After sale by the master, the widow commenced proceedings before the master to secure homestead set apart to her and the children, pending which the sale was made, at which notice was given of such proceeding and claim. The widow, through her attorney, bid off the

land, refused to comply, and this suit was then brought to enforce the compliance. The defense was that the land was not subject to sale. The Court, at page 514, says, 'The debt claimed was a valid debt, and there' was no defense thereto set up, nor could there have been, but it seems to us, instead of its existence defeating the homestead, it furnished the reason why it should be claimed. Nor do we think the widow and children were required to claim it in that proceeding. That was a proceeding in the Court of Common Pleas, which has full jurisdiction as to homesteads, the General Assembly having provided statutory proceedings in such cases other than such as can be furnished by the Court of Common Pleas, and which this Court had several times held must, as a general rule, be followed. *Norton* v. *Bradham*, 21 S. C., 384; *Ex parte Strobell*, 2 S. C., 309. Such being the fact, we do not think the failure of the widow and children to set up their claim in that proceeding, nor their silence, nor their seeming acquiescence in the order of sale, should shut off the claim now endeavored to be enforced in the mode provided by the statute, as they supposed.' At foot of page, *supra*, the Court says: 'There is no doubt but that the widow and children of the deceased debtor are entitled to a homestead out of his lands (sec. 1997, Gen. Stat.), and notwithstanding the fact that the decree ordering the sale may be regarded as a "process" technically, yet the purpose of the act being to secure such homesteal to such claimants, we think the spirit and intent of the act would sanction the application here, and that the master should have set off the homestead before proceeding with the sale. He was an officer holding a process of sale, and under the act in such cases he was bound to set off the homestead before selling.' We think the petitioner is not estopped from demanding his homestead by his failure to set it up in the original proceeding.

"It is further argued by respondent that the heirs of Lewie hold an equitable mortgage and there can be no homestead

claim against it. That is true as a legal proposition, but here it is settled that the deed was made to secure a debt of $350, which has been fully paid, and the balance found to be due by the petitioner is for merchandise and money advanced to him for years after the execution of the deed, with no reference whatever, so far as the findings go, to the deed as in any way securing such advances. It seems to me that as against this debt the petitioner is entitled to his homestead.

"It is ordered, that a writ of mandamus do issue commanding the said Samuel B. George, as clerk of Court of Common Pleas for Lexington County, to set apart, as provided by the statute, to the petitioner a homestead in the lands described in the petition."

From this order, defendant, George, as clerk, appeals.

*Messrs. T. C. Sturkie* and *G. T. Graham,* for appellant, cite: 53 S. C., 18; 20 S. C., 83; 26 S. W., 287; 56 S. W., 49; 66 S. W., 854; 51 S. W., 663.

*Messrs. J. B. Wingard* and *Efird & Dreher,* contra, cite: 53 S. C., 18; 20 S. C., 23; 1 Jones on Mtg., secs. 283, 345, 347; 26 S. C., 337; 51 S. C., 100; Code, 1902, 2374, 2630; 33 S. C., 512; 24 S. C., 29, 468; 21 S. C., 11; 6 L. R. A., 94; Con. 1868, art. II., sec. 32; Con. 1895, art. III., sec. 28.

February 7, 1905. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from a judgment ordering that a writ of mandamus do issue commanding Samuel B. George, as clerk of the Court, to set apart to the petitioner a homestead in the lands described in the petition, as provided by the statute. The facts are fully set out in said judgment. Samuel B. George, as clerk of the Court, appealed upon several exceptions.

After D. J. Hallman executed the deed to J. H. Lewie. to secure the payment of a certain sum of money, he became

further indebted to the said J. H. Lewie. The heirs of J. H. Lewie brought an action to recover the land described in the petition, and for a partition thereof.

In answering the complaint, D. J. Hallman did not set up a claim to homestead, but alleged that the indebtedness intended to be secured by the deed as a mortgage, had been satisfied, and invoked the aid of the Court, in exercise of its chancery powers, to order a reconveyance of the land to him. The Circuit Court, upon hearing those issues, found as matter of fact, that the original indebtedness, intended to be secured by the deed as a mortgage, had been satisfied, and that the said D. J. Hallman was entitled to a reconveyance of the land. On appeal, the Supreme Court held that the Circuit Court was in error, and that D. J. Hallman was not entitled to a reconveyance until he paid, not only the original, but all subsequent indebtedness. It remanded the case for the purpose of having all the indebtedness ascertained. This was subsequently done, and a decree was made adjudging reconveyance to D. J. Hallman, provided he tendered the amount so found within a certain time therein specified, but also providing for a sale of the land to pay the said indebtedness, in case the tender was not made. There was no appeal from this decree.

The Supreme Court applied the wholesome doctrine that when a party seeks equity he must do equity, and, therefore, that when D. J. Hallman invoked the aid of the Court in the exercise of its equitable jurisdiction to have the deed declared to be a mortgage, and the land reconveyed to him, it was incumbent on him, not only to pay the original indebtedness, but likewise all subsequent claims J. H. Lewie held against him. The subsequent indebtedness was practically placed upon the same footing as the original debt. The entire indebtedness was, therefore, paramount to the claim of homestead. *Ex parte Kurz,* 24 S. C., 468.

Furthermore, the petitioner by failing to set up his claim of homestead is concluded by the judgments heretofore rendered. *Culler* v. *Crim,* 52 S. C., 574, 30 S. E., 635; *Hadden* v. *Lenhardt,* 54 S. C., 88, 31 S. C., 883.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the petition dismissed.